IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Edward W. Van Romer and Basic Concepts, Inc.,         ) | |
|         ) | Case No. 8:10-cv-02649-JDA |
| Plaintiffs,         ) | |
|         ) | |
| v.         ) | **ORDER** |
|         ) | |
| Argonaut Inflatable Research and Engineering, Inc.,         ) | |
|         ) | |
| Defendant.         ) | |
| _____) | |

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. [Doc. 6.] The Court is authorized to enter an order on Defendant's motion pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to have the case referred to a magistrate judge; and the Honorable Henry F. Floyd's May 31, 2011 Order referring this matter to this magistrate judge for disposition.

This is an action for patent infringement under 35 U.S.C. § 281, and the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338. The Court has reviewed the complete record in this matter, including the pleadings, briefs, affidavits, and exhibits submitted by the parties, as well as the applicable law. For the reasons given below, the Court finds that it lacks personal jurisdiction over Defendant and, therefore, grants Defendant's motion to dismiss for lack of personal jurisdiction.

**BACKGROUND**

On October 13, 2010, Plaintiffs Edward W. Van Romer and Basic Concepts Inc., ("Van Romer" and "Basic," collectively "Plaintiffs") filed this action, alleging infringement by Defendant Argonaut Inflatable Research and Engineering Inc. ("Defendant" or "AIRE") of U.S. Patent No. 5,762,233 ("'233 Patent") for a foldable spill collector container, or berm. [Doc. 1.] Van Romer, who resides in Anderson, South Carolina, alleges he is the inventor and owner of the '233 Patent. [Doc. 1 ¶ 2.] Basic alleges it is a South Carolina corporation and is the exclusive licensee of the '233 Patent. [*Id.* ¶¶ 3–4.]

In response, on December 6, 2010, Defendant filed a motion to dismiss for lack of personal jurisdiction and insufficient service of process. [Doc. 6.] Defendant alleges it is a small, privately-owned company located in Meridian, Idaho. [Doc. 6-2 ¶ 3.] Defendant alleges it has no offices or employees in South Carolina; does not own, lease, or store any real or personal property in South Carolina; has no distributors for its berm products in South Carolina; and is not registered to do business in South Carolina. [*Id.* ¶¶ 4–6.] Defendant further alleges it does not advertise any of its products in any publication published in South Carolina and does not direct any of its advertising or marketing at South Carolina. [*Id.* ¶ 11.] Defendant alleges that, at most, it has sold only a minuscule percentage of its other products[1] to customers located in South Carolina after those customers contacted Defendant's distributors located in other states. [*Id.* ¶ 13.] Accordingly, Defendant argues that its minimal contacts with South Carolina are not

---

[1]Defendant alleges that any such sales would be of inflatable rafts, kayaks, or catarafts, which are sold by Defendant's other divisions. [Doc. 6-2 ¶ 13.]

sufficient to satisfy the high standard to subject it to the Court's general personal jurisdiction.  [Doc. 6-1 at 6.]

Additionally, Defendant argues the elements necessary for the Court to exercise specific jurisdiction are not met because Defendant made only one sale of the allegedly infringing product in South Carolina [*id.* at 7], and this sale was orchestrated by Plaintiffs to justify the assertion of specific jurisdiction [*id.* at 8; Doc. 6-2 ¶ 7].

Further, Defendant contends the initial service of process was improper.  Between the filing of this suit and the attempted service of the Complaint on Defendant, the parties attempted to negotiate a settlement but failed to reach an agreement.[2]  [Doc. 6-3 ¶¶ 4–13, 18.] Plaintiffs attempted to serve the complaint on Defendant by mailing the summons and Complaint to Defendant's patent counsel and asking counsel to sign an acceptance of service, which counsel never signed.  [*Id.* ¶¶ 13–16, 19.]  Subsequent to Defendant's filing of its motion to dismiss, however, Plaintiffs served the Complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure.  [Doc. 8; *see* Doc. 18 at 2.]  Defendant argues, however, that this attempt to correct service does not moot its motion to dismiss pursuant to Rule 12(b)(5).  [Doc. 18 at 2–3.]

---

[2]AIRE argues that it agreed to cease the manufacture and sale of the product because it had sold only 114 of the allegedly infringing product and that little, if any, profit was made on these products.  [Doc. 6-1 at 9 (citing Affidavit of Charles R. Clark ¶ 9).]

3

## APPLICABLE LAW

**Motion to Dismiss Standards**

### *Rule (12)(b)(2)*

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move the court to dismiss an action based on a lack of personal jurisdiction. "[W]hen, as here, [a] court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). To satisfy this burden, the plaintiff must base its claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). Accordingly, "[t]he pleadings, affidavits, and other supporting documents presented to the court are construed in the light most favorable to [the] plaintiff, drawing all inferences and resolving all factual disputes in its favor." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. 2000) (unpublished table opinion) (citing *Mylan Labs.*, 2 F.3d at 60); *see also Mylan Labs.*, 2 F.3d at 62 ("In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." (citing *Combs*, 886 F.2d at 676; *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984))). The court, however, need not "'credit conclusory allegations or draw farfetched inferences.'" *Masselli*, 2000 WL 691100, at *1 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

4

### *Rule (12)(b)(5)*

Under Rule 12(b)(5), a defendant can move to dismiss a complaint where service of process failed to comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(5). Rule 4(h) governs the service of process upon corporations and provides,

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
> > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> >
> > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant . . . .

Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) governs service of process upon individuals in the United States and provides that service may be accomplished by

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Noncompliance with Rule 4 does not mandate dismissal where the necessary parties have received actual notice of a suit and where they have not been prejudiced by a technical defect in service. *See Karlsson v. Rabinowitz*, 318 F.2d 666, 668–69 (4th Cir. 1963) (upholding service upon the defendant's wife at a home to which the defendant never intended to return).

**Personal Jurisdiction**

A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (citing *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985)). The applicable state long-arm statute, S.C. Code Ann. § 36-2-803, has been interpreted by South Carolina courts to extend to the outer limits of due process. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002) (citing *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 265 (D.S.C. 1995)); *see, e.g.*, *Triplett v. R.M. Wade & Co.*, 200 S.E.2d 375, 378–79 (S.C. 1973). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005) (citing *Moosally v. W.W. Norton & Co., Inc.*, 594 S.E.2d 878, 883 (S.C. Ct. App. 2004)); *Cozi Invs. v. Schneider*, 272 S.E.2d 116, 118 (S.C. 1979) ("South Carolina's Long-Arm Statute has been construed on several occasions as a grant of jurisdiction as broad as constitutionally

6

permissible. Hence, the parameters of our Long-Arm Statute are restricted only by the due process limitations." (internal citations omitted)).

In patent cases before a federal district court, the court's subject matter jurisdiction arises under the patent laws; therefore, Federal Circuit law, rather than Fourth Circuit law, controls the analysis of the federal due process requirement.[3] *See, e.g.*, *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies." (internal citations omitted)); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994). The Due Process Clause is satisfied for personal jurisdiction purposes if a defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A

---

[3] In this case,

> [b]ecause . . . jurisdiction . . . exists by virtue of a federal question, "[t]he Due Process Clause that is at issue here is the Due Process Clause of the Fifth Amendment." *Beverly Hills Fan*, 21 F.3d at 1560 n. 1, 30 USPQ2d at 1003 n. 1. "The Supreme Court's constitutional jurisprudence of personal jurisdiction . . . includes only state and diversity cases, and thus explicates the demands of the Fourteenth Amendment's Due Process Clause, rather than that of the Fifth's." *Akro v. Luker*, 45 F.3d 1541, 1544-45, 33 USPQ2d 1505, 1508 (Fed. Cir. 1995). The Federal Circuit has "nonetheless applied the 'minimum contacts' standard [articulated to determine if an exercise of personal jurisdiction comports with Fourteenth Amendment due process] . . . to questions of personal jurisdiction in federal cases, such as those arising under the patent laws." *Id.*

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 n.5 (Fed. Cir. 2000) (fourth, fifth, and seventh alterations in original).

7

defendant purposefully avails itself of the privilege of conducting activities within a forum state by establishing sufficient minimum contacts such that "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  If the defendant has sufficient minimum contacts with the forum state, the defendant's minimum contacts satisfy the Due Process Clause requirement "that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'"  *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)) (alteration in original); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

Under the "minimum contacts test," a court "examines the number and nature of a defendant's contacts with the forum."  *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).  Determining whether the defendant has sufficient minimum contacts involves evaluating the relationship between the defendant, the forum, and the litigation.  *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).  Sufficient minimum contacts do not include those that are random, fortuitous, or attenuated, *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299), or those that are the product of the "'unilateral activity of another party or a third person,'" *id.* (quoting *Helicopteros Nacionales de*

8

*Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).[4] After examining the number and nature

of a defendant's contacts, the court can determine whether it may exercise one of two

types of personal jurisdiction—specific or general. *See Red Wing Shoe*, 148 F.3d at 1359.

### Specific Jurisdiction

If a cause of action arises out of or relates to the defendant's contacts with the

forum, a court may exercise specific personal jurisdiction. *Helicopteros Nacionales*, 466

---

[4] Although Federal Circuit law applies in this case to a determination of whether personal jurisdiction exists, the Court finds instructive the Fourth Circuit's collection of factors used by federal courts to determine whether a defendant has sufficient minimum contacts with the forum; these factors include, but are not limited to:

> • whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957);
>
> • whether the defendant owns property in the forum state, *see Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002);
>
> • whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221, 78 S. Ct. 199; *Burger King*, 471 U.S. at 475–76, 105 S. Ct. 2174;
>
> • whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475–76, 481, 105 S. Ct. 2174;
>
> • whether the parties contractually agreed that the law of the forum state would govern disputes, *see Burger King*, 471 U.S. at 481–82, 105 S. Ct. 2174;
>
> • whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985);
>
> • the nature, quality and extent of the parties' communications about the business being transacted, *see* [*English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990)]; and
>
> • whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

U.S. at 414 n.8; *see* S.C. Code Ann. § 36-2-803. "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if [a defendant's contacts with the forum] are 'isolated and sporadic.'" *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting *Burger King*, 471 U.S. at 472–73). "'[E]ven a single act can support jurisdiction,' so long as it creates a 'substantial connection' with the forum, as opposed to an 'attenuated affiliation.'" *Red Wing Shoe*, 148 F.3d at 1359 (quoting *Burger King*, 471 U.S. at 475 & n.18). A court may exercise specific personal jurisdiction over the defendant if "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharms., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995)).

### *General Jurisdiction*

If the suit is unrelated to the defendant's contacts with the forum state, the court may exercise general jurisdiction, *Helicopteros Nacionales*, 466 U.S. at 414 n.9; *see* S.C. Code Ann. § 36-2-802, but the threshold level of minimum contacts necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction, *see Helicopteros Nacionales*, 466 U.S. at 414 nn.8–9. To establish general jurisdiction, the plaintiff must show that the defendant "maintains 'continuous and systematic' contacts with the forum state." *LSI Indus.*, 232 F.3d at 1375 (citing *Helicopteros Nacionales*, 466 U.S. at 414–16). Summarizing the Supreme Court's rationale in *International Shoe*, the Fourth Circuit has stated,

> "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *International Shoe*, 326 U.S. at 317, 66 S. Ct. at 159. Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." *Id.* at 318, 66 S. Ct. at 159. Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant. *Id.*

*Nichols*, 991 F.2d at 1199 (alterations in original).[5]  The Federal Circuit has noted that neither it nor the Supreme Court "has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic,'" but "a court must look at the facts of each case to make such a determination." *LSI Indus.*, 232 F.3d at 1375.

### Defeating Personal Jurisdiction

If a plaintiff makes the required showing that there have been sufficient minimum contacts with the forum state by the non-resident defendant, jurisdiction may still be defeated if its exercise would be unreasonable and contrary to concepts of fair play and substantial justice. *See Akro Corp.*, 45 F.3d at 1545–46.  The reasonableness inquiry is a multi-factor balancing test that weighs "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering

---

[5] The Fourth Circuit has also stated that "broad constructions of general jurisdiction should be generally disfavored." *Nichols*, 991 F.2d at 1200; *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 550 (E.D. Va. 2004) ("[I]t is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.").

fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292) (internal quotation marks omitted). However, defeating an otherwise constitutional exercise of personal jurisdiction on the grounds of unreasonableness is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568.

## **DISCUSSION**

### **Exercise of Personal Jurisdiction Over Defendant**[6]

#### *Specific Jurisdiction*

Plaintiffs allege Defendant has sold one of the accused products to a South Carolina resident, and thus, Plaintiffs' patent infringement suit arises from Defendant's activities in South Carolina. [Doc. 13 at 5.] Plaintiffs also argue Defendant has affirmatively sought and bid for berm sales in South Carolina [*id.* at 6] through a government contract bid [Doc.

---

[6] In addition to the requirements outlined above, for a court to exercise personal jurisdiction over a defendant, "the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). As the Supreme Court has stated,

> "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Id.* (quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)). Here, although Defendant challenges the sufficiency of Plaintiffs' initial service of the Complaint, Defendant does not challenge whether it was amenable to service under the Federal Rules of Civil Procedure, and Defendant accepted Plaintiffs' second service of process. Accordingly, the Court finds the service requirement is satisfied by Defendant's consent to accept service and does not address whether Defendant was amenable to service of process.

14-1]. Defendant asserts that the requirements for specific jurisdiction have not been met by virtue of this single sale of the accused product in the forum because this sale was orchestrated by Plaintiffs for the sole purpose of manufacturing jurisdiction in this District. [Doc. 18 at 4–5.] Defendant contends that the berms sold under the GSA contract were not infringing—and Plaintiffs did not allege that those berms were infringing—and therefore, specific jurisdiction could not be based on Defendant's products that reached South Carolina under the GSA contract because Plaintiff's cause of action does not arise from those products. [*See id.* at 4.]

Generally, when an alleged infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the alleged infringer. *See Beverly Hills Fan*, 21 F.3d at 1570–71. Courts have repeatedly held, however, that jurisdiction may not be manufactured by the conduct of others. *See Red Wing Shoe*, 148 F.3d at 1359 (holding contacts resulting from the unilateral activity of others do not count in the minimum contacts calculation); *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127 (4th Cir. 1986); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998) (holding one sale by manufacturer of an allegedly infringing product, totaling $246, to a single unsolicited buyer in the forum state did not satisfy the minimum contacts requirement for the exercise of specific jurisdiction). Consequently, to determine whether the Court may properly exercise specific jurisdiction over Defendant, the Court must

determine whether the allegedly infringing product that has reached South Carolina[7] was a legitimate sale by Defendant or was an attempt to manufacture jurisdiction.

The evidence establishes that, on or about October 11, 2010, an order was placed with AIRE Industrial Products for one 10'x10'x12' Quick Stay Berm. [Doc. 13-6 at 2.] The berm was to be shipped to the attention of Tim Beek at Carolina Eastern Fertilizer Co.[8] in Aiken, South Carolina. [*Id.*] A review of internal records indicated that the order was paid for by a woman in Georgia, who asked that the product be shipped to South Carolina. [Doc. 18-1 ¶ 11.] After some investigation, Defendant learned that Todd Beak, a design and manufacturing engineer at Basic, has a relative named Tim Beak who lives in Aiken, South Carolina. [*Id.* ¶¶ 12–16.] Upon further investigation, Defendant found that "Tim Beek" did not work for Carolina Eastern Fertilizer Co. [*Id.* at ¶ 17.]

Based on these facts, Defendant argues Plaintiffs engaged in "subterfuge" in an effort to create jurisdiction.[9] [*Id.* ¶ 19.] Plaintiffs contend the purchase was not made to

---

[7] Plaintiffs have not shown that the allegedly infringing product was "sold" in South Carolina. Plaintiffs have not provided any evidence to refute Defendant's evidence that the allegedly infringing product that has reached South Carolina was sold to a woman in Georgia, who directed that the allegedly infringing product be shipped to South Carolina. [Doc. 18-1 ¶¶ 9, 11.] Although the allegedly infringing product was not sold in South Carolina, the Court notes that if this sale was legitimate, knowingly shipping the allegedly infringing product to South Carolina may be enough to establish that Defendant "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King*, 471 U.S. at 475 (quoting *Hanson*, 357 U.S. at 253); *see Red Wing Shoe*, 148 F.3d at 1359 (quoting *Burger King*, 471 U.S. at 475 & n.18) ("'[E]ven a single act can support jurisdiction,' so long as it creates a 'substantial connection' with the forum, as opposed to an 'attenuated affiliation.'"). On the other hand, Defendant did not solicit the sale, which may weigh against finding Defendant had sufficient minimum contacts with South Carolina even though Defendant shipped the allegedly infringing product to South Carolina. However, because the Court finds this one sale was not legitimate as explained below, the Court will not address whether this one sale established sufficient minimum contacts.

[8] Defendant has not conducted business with Carolina Eastern Fertilizer Co. apart from this single order. [Doc. 18-1 ¶ 10.]

[9] Defendant sums up Plaintiffs' supposed subterfuge as follows: "Plaintiffs went to great lengths to hide the fact that they arranged for several intermediaries to purchase the single allegedly infringing product from Georgia and have it shipped to South Carolina, apparently to create specific jurisdiction." [Doc. 18 at 5.]

14

create jurisdiction but was for the purpose of establishing a solid factual basis for filing the Complaint through a physical examination of the accused device.[10]  [Doc. 19-1 ¶ 18.]

Upon consideration, the Court finds that this one sale of the allegedly infringing product linking Defendant to South Carolina cannot form the basis for specific jurisdiction over Defendant because Defendant did not purposefully avail itself of the privilege of conducting activities in South Carolina.  Although they do not admit that they instigated the sale to manufacture personal jurisdiction, Plaintiffs admit that they instigated the one sale of the allegedly infringing product that has reached South Carolina for the purpose of this litigation—to form a solid factual basis for the Complaint.  Therefore, the Court finds this one sale cannot form the basis for specific jurisdiction because Plaintiff's cause of action did not arise out of this sale.

### General Jurisdiction

Plaintiffs argue that the Court need not address general jurisdiction because specific jurisdiction unquestionably exists.  [Doc. 13 at 7.]  However, in support of the exercise of general jurisdiction, Plaintiffs argue that Defendant has authorized dealers or sales representatives in South Carolina, has made sales through national retail sellers in the state, and has made bids for South Carolina sales and sales into the state.  [*Id.*]  These activities, Plaintiffs argue, characterize a continuous and systematic presence in South Carolina and warrant the exercise of general jurisdiction over Defendant.  [*Id.*]

To decide whether to exercise general jurisdiction over an out-of-state defendant, a court must analyze the facts of the specific case before it.  *LSI Indus.*, 232 F.3d at 1375.

---

[10] The order was placed on October 11, 2010 [Doc. 13-6 at 2], and the Complaint was filed on October 13, 2010 [Doc. 1].

15

For the court to exercise general jurisdiction, the facts must demonstrate that the defendant has engaged in continuous and systematic activity within the forum, regardless of whether the activity is related to the plaintiff's cause of action. *Id.* at 1375 (citing *Helicopteros Nacionales*, 466 U.S. at 414–16). For example, in *LSI Industries*, the Federal Circuit found the defendant was subject to general jurisdiction in the forum because the defendant had millions of dollars in sales and a broad distributorship network in the forum. *Id.* In another case, the Federal Circuit agreed with the district court that exercising general jurisdiction would be improper where the defendant's contacts "include[d] attendance at trade shows, purchases of parts and a machine, the sale of a product for a veterinary application to one customer, and a pair of consultations about product development." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009). Finally, in *Helicopteros Nacionales*, the Supreme Court held a defendant's contacts with the forum were not continuous and systematic where the defendant did not have a place of business in the forum and had never been licensed to do business in the forum and where the defendant's contacts consisted of sending its chief executive officer to the forum for a contract-negotiation session; accepting into its bank account in another state checks drawn on a bank in the forum; for substantial sums, purchasing helicopters, equipment, and training services from a company in the forum; and sending the defendant's personnel for training at another company's facilities in the forum. 466 U.S. at 416; *see also Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 F. App'x 322, 337 (Fed. Cir. 2003) (unpublished opinion) (holding the defendant had insufficient

16

contacts with the forum to exercise general jurisdiction and collecting cases where the defendants did not have sufficient contacts for the court to exercise general jurisdiction).

*Defendant's Berm Sales*

Here, Plaintiffs provided the declaration of Chad McCall ("McCall"), a regional sales manager for Basic, who stated that AIRE has won at least one GSA contract [11] that called for berms to be shipped to various locations, including South Carolina. [Doc. 14-1 ¶¶ 3, 5; *see* Doc. 13-7 at 4.] According to the Request for Quote for the contract referenced by McCall, of the 162 berms requested under the contract, ten berms were to be shipped to Greenville, South Carolina and five to Spartanburg, South Carolina. [Doc. 13-7 at 4; *see also* Doc. 14-1 ¶ 5 ("AIRE was awarded the contract and was therefore required to supply berms in South Carolina.").] The berms were sold for $514 each [Doc. 13-7 at 2], such that AIRE possibly made $7,710.00 from the GSA contract for berms shipped to South Carolina.

In response, Defendant noted that the Request for Quote was issued by the GSA in Fort Worth, Texas [*id.* at 4], and the contract was entered into in Forth Worth [Doc. 18-1 ¶ 6]. Defendant contends that under the contract, "GSA can ship any AIRE product to any location worldwide." [*Id.*] Further, Defendant pointed out the GSA contract did not involve the allegedly infringing product at issue in this litigation but rather a product patented by

---

[11]The Request for Quote for this contract indicates that the customer was the U.S. Army, Navy, Air Force, and Marines. [Doc. 13-7 at 4.]

Defendant, not Plaintiffs. [Doc. 18-1 ¶ 7.] Plaintiffs do not contest Defendant's argument that the berms sold under the government contract were not infringing.[12]

*Defendant's Sales of Other Products*

Plaintiffs also provided the declaration of Lee Hill ("Hill"). [Doc. 15-1.] Hill is employed by Basic as Territory Sales Manager, and Hill also owns Invisible Sun, Inc., d/b/a Outdoor Adventures in Clemson, South Carolina. [*Id.* ¶¶ 2–3.] Hill stated that a colleague of his in the outfitting business, Mike Stockton ("Stockton"), owner of Chattooga Whitewater Shop in Oconee County, South Carolina, used AIRE brand rafts and kayaks as Stockton's rental fleet and had four new AIRE Tomcat IV's[13] for sale. [*Id.* ¶ 4.] Stockton also represented to Hill that Stockton routinely sells AIRE inflatables, and any AIRE product not currently in stock was readily available. [*Id.*]

Hill also stated that Chattooga Whitewater and Adventure Carolina in Cayce, South Carolina are listed as Authorized Dealers on Defendant's website. [*Id.* ¶ 5; Doc. 13-3 at 3.] Hill averred he spoke with Kevin Gettings ("Gettings") at Adventure Carolina, who stated Adventure Carolina had one Tributary CAT AIRE Tomcat-Solo in its retail inventory and had AIRE products in its rental fleet. [Doc. 15-1 ¶ 5.] Gettings told Hill that Gettings could easily obtain whatever AIRE products were currently not in inventory. [*Id.*]

---

[12]The Court notes that, pursuant to 28 USC § 1498(a), when a patented invention is used or manufactured by or for the United States without a license from the owner, the remedy shall be an action against the United States in the Court of Federal Claims. Use or manufacture is "for" the government when "the use or manufacture of a patented method or apparatus occurs pursuant to a contract with the government and for the benefit of the government." *Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007). Therefore, if Plaintiffs were to allege infringement for the sales into South Carolina pursuant to the GSA contract, their exclusive remedy is in the Court of Federal Claims.

[13] The Tomcat models are inflatable kayaks. *See* Doc. 13-1 at 5.

18

Further, Hill stated that Defendant sells fishing products through Bass Pro Shops, and a Bass Pro Shops retail store is located in Myrtle Beach, South Carolina.  [*Id.* ¶ 6.] According to Hill, he called the Myrtle Beach store and talked to John Johnson, the fishing department lead.  [*Id.*]  Johnson stated he could have an AIRE Outcast Fish Cat® 4-LCS Float Tube in the Myrtle Beach store in five to seven days.  [*Id.*; *see* Doc. 13-5 at 2.]

Defendant, through the declarations of Dan Allumbaugh ("Allumbaugh"), its General Manager and Vice President [Docs. 6-2, 18-1], stated Defendant has no offices or employees in South Carolina; neither leases nor owns property in South Carolina; has no bank accounts in South Carolina; and is not registered to do business in South Carolina [Doc. 6-2 ¶¶ 4–6].  Allumbaugh further stated Defendant does not advertise any products in any publication in South Carolina and does not direct its advertising or marketing at South Carolina.[14]   [*Id.* ¶ 11.]  Finally, Allumbaugh stated that although people in South Carolina have purchased a few products, such as inflatable rafts, kayaks, and catarafts, from one of Defendant's other divisions by contacting Defendant in Idaho or one of its distributors in other states, such sales are a minuscule percentage of Defendant's total sales.  [*Id.* ¶ 13; Doc. 18-1 ¶ 5.]

*Analysis*

Based on the above, the Court finds Plaintiffs have failed to show Defendant had sufficient minimum contacts with South Carolina to support the exercise of general jurisdiction.  While Defendant does have some contacts with South Carolina, the number

---

[14]The Court notes Plaintiffs contend they do not base their jurisdictional contentions on Defendant's website [Doc. 13 at 6 n.27], although Plaintiffs attached several pages of screen shots from the website to their response in opposition to Defendant's motion to dismiss [Docs. 13-1, 13-2, 13-4.]  Therefore, the Court will not consider the impact of Defendant's website on the Court's jurisdictional analysis.

of related contacts—the berm sales under the GSA contract—is very low.  *See Red Wing Shoe*, 148 F.3d at 1359 ("The 'minimum contacts' test examines the number and nature of a defendant's contacts with the forum.").  Also, Defendant does not maintain offices in South Carolina and is not registered to do business in South Carolina.  [Doc. 6-2 ¶¶ 4, 6.] Defendant does not have employees in South Carolina, owns no property in South Carolina, and does not maintain any bank accounts in South Carolina.  [*Id.* ¶¶ 4–5.] Defendant does not advertise or promote products in South Carolina.  [*Id.* ¶ 11; *see* Doc. 18-1 ¶ 4 (stating that the allegedly infringing product was never advertised and did not appear on Defendant's website).]  Further, Defendant has submitted that its sales of products in South Carolina are a minuscule portion of Defendant's total sales.  [Doc. 6-2 ¶ 13; Doc. 18-1 ¶ 5.]

As a result, the Court finds Plaintiffs have not carried their burden of demonstrating that Defendant had sufficient minimum contacts with South Carolina for the Court to exercise general jurisdiction over Defendant.  Even if the Court were to find Defendant was "doing business" in South Carolina, Defendant's few contacts with the state preclude a finding that Defendant had "continuous and systematic" contacts with South Carolina, and an assertion of general personal jurisdiction would violate the Due Process Clause.  *See Helicopteros Nacionales*, 466 U.S. at 416.  Accordingly, this Court is without the power to assert personal jurisdiction over Defendant.

## **CONCLUSION**

Wherefore, based on the foregoing, it is ORDERED that Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.[15]

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 24, 2011
Greenville, South Carolina

---

[15] In light of the Court's holdings, Plaintiffs' request for additional jurisdictional discovery [Doc. 13 at 4] is denied.